Filed 12/28/22  Crossroads Financing v. Corliss CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CROSSROADS FINANCING, LLC, | H049208 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. 19CV005216) |
| v. | |
| ROBERT JAMES CORLISS, | |
| Defendant and Appellant. | |

This collection action was brought by lender Crossroads Financing, LLC (Crossroads) against guarantor Robert James Corliss (Corliss).  On different occasions, Corliss signed two personal guaranties to secure a loan made originally by the assignor of Crossroads and later by Crossroads to the underlying borrower.  The original borrower was Robert Talbott, Inc. (Talbott), a manufacturer and retailer of high-end apparel.  After filing the action, Crossroads obtained a right to attach order and order for issuance of a writ of attachment pursuant to Code of Civil Procedure section 483.010[1] in the amount of $3,066,000 against Corliss's ownership interest in Monterey real property (hereafter, the Attachment Order).  Corliss did not appeal that Attachment Order.  Thereafter, Crossroads sought and obtained an order granting an additional writ of attachment in the amount of $1,538,720.09 against a deposit account in Corliss's name; the order was filed

_____

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

April 27, 2021 (hereafter, the Additional Attachment Order, or Order). Corliss appeals the Order.

Corliss asserts a number of challenges to the Additional Attachment Order, including the arguments that (1) the underlying loan which he guaranteed had been fully satisfied, (2) Crossroads breached the terms of the guaranty by failing to take commercially reasonable steps to satisfy the obligation through recourse to the collateral given for the loan, (3) the property attached in the Order was exempt from attachment, and (4) Crossroads did not present substantial evidence in support of its request for the Additional Attachment Order. Crossroads raises, by separate motion to dismiss, an initial procedural hurdle: It contends that Corliss has filed an appeal from a nonappealable order, and that this appeal should therefore be dismissed.

We conclude that the Additional Attachment Order of April 23, 2021, is not an appealable order. Accordingly, since we have no jurisdiction, we will grant the motion of Crossroads to dismiss the appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Pre-Suit Background

As alleged in the complaint and in subsequent pleadings filed by Crossroads in support of its application for writ of attachment, this matter arose out of commercial loans to Talbott, a national wholesaler and retailer of high-end men's dress shirts, ties, and other garments. The original loan was made in September 2018 by Lenders Funding, LLC (Lenders Funding), the assignor of Crossroads, under which it agreed to advance funds of up to $4 million to Talbott. The loan documents were signed on behalf of the borrower, Talbott, by Corliss, its president. Corliss executed a personal guarantee at the time for Talbott's obligations (2018 Corliss Guaranty). In December 2018, Lenders Funding assigned its interest in the loan to Crossroads. It was recited in the agreement assigning the loan that (1) the unpaid balance on Talbott's obligation was then

2

$3,614,890, and (2) the assignment included " 'all Collateral and guarantees relating thereto.' "

As of May 2019, Talbott began closing its retail stores.  In June 2019, as a means of facilitating the liquidation of the Collateral given for the original loan (i.e., the inventory, accounts receivable, and intellectual property), Crossroads, Corliss, and entities controlled by Corliss (RCMC Holdings, LLC, RT Brands, LLC, and RTB Promotion) entered into a written Assumption Agreement.  In connection with executing this agreement, Corliss executed a new guaranty (2019 Corliss Guaranty) under which he personally guaranteed all obligations of RT Brands, LLC and RTB Promotion, LLC under the Assumption Agreement.

Defaults under the loan agreement and the Assumption Agreement occurred thereafter, resulting in Crossroads, on September 13, 2019, sending a written demand for payment to Corliss to enforce Crossroads's rights under the 2018 and 2019 Corliss Guaranties.

### B.  The Lawsuit and Attachment Orders

Crossroads filed a complaint against Corliss on December 27, 2019.[2]  It alleged two causes of action for breach of personal guaranty, alleging the total amount owing to be $4,766,035.35.  Three days later, Crossroads filed an ex parte application for right to attach order and writ of attachment.  It identified the amount to be secured by the attachment as the indebtedness alleged in the complaint, and sought an attachment against, inter alia, real property in Monterey owned by Corliss.

On March 20, 2020, the court issued an ex parte right to attach order and an order for issuance of writ of attachment (i.e., the Attachment Order).  It found that Crossroads had a right to attach property of Corliss in the amount of $3,066,000 against his ownership interest in specified real property, 7549 Canada Vista Court, Monterey (the

---

[2] The complaint was later amended.

Monterey Property).[3]  The court required an undertaking of $800,000 as a condition for the issuance of the writ of attachment.  Corliss did not appeal the court's March 20, 2020 Attachment Order.

Pursuant to a later ex parte application by Crossroads, on June 11, 2020, the court issued a further order directing the clerk to issue the writ of attachment pursuant to the prior Attachment Order.  The writ was thereafter issued by the clerk upon the filing of an undertaking.

On February 22, 2021, Crossroads filed an ex parte application for additional writ of attachment.  Crossroads asserted that although the court had previously issued a right to attach order and a writ of attachment issued to attach the Monterey Property, Crossroads was under-secured.  Crossroads alleged that the amount of the guaranteed obligation had increased to $5,954,720.09, while the estimated equity value of the Monterey Property was $2,719,784 and the estimated value of the collateral was $978,000, leaving an estimated amount of $2,256,936.09 of the debt that was unsecured.  Crossroads therefore sought an order for an additional writ of attachment under sections 484.510 through 484.530.  It identified the property to be attached as two deposit accounts at UBS Financial Services, Inc. in Corliss's name; ultimately the Additional Attachment Order was issued as to one such account (the UBS Account).  Corliss opposed the application.  The court, on February 25, 2021, granted a temporary

---

[3] The record reflects that the court conducted a hearing on January 2, 2020 on the ex parte application for right to attach order and writ of attachment, and that the court found that the elements of section 483.010 had been met, but that it requested further briefing concerning the amount of undertaking it should require and the value of the collateral being held by Crossroads in order to offset that amount against the indebtedness of $4,766,035.35 alleged in the application.  Crossroads filed a declaration and memorandum indicating that the value of the security was between $1,125,000 and $1,450,000.  Based upon Crossroads's filing, the amount of the attachment (after subtracting the value of the collateral) would have been $3,316,035.35, or $250,000 greater than the amount ordered by the court.  The record also showed that the real property referenced in the court's order had been listed for sale at a price of $4,650,000.

4

protective order in the amount of $2 million as to the UBS Account and continued the hearing on the application for additional writ of attachment.

After submission of further papers in support of, and in opposition to, the application for an additional writ of attachment, the court on April 23, 2021, granted the application of Crossroads for issuance of an additional writ of attachment, with an undertaking set at $10,000.

Corliss filed a notice of appeal from the Additional Attachment Order.

## II.     DISCUSSION

### A.     Motion to Dismiss

#### 1.     *Procedural Background*

While the appeal was pending but prior to the filing of the opening brief, Crossroads filed a motion to dismiss the appeal. It contended the Additional Attachment Order was not appealable, and that therefore the appeal must be dismissed. Crossroads contended that there was no statutory authority making an order granting an additional writ of attachment—that followed the issuance of a right to attach order and writ of attachment order—subject to an appeal.

Corliss filed opposition to the motion to dismiss. He argued that the Additional Attachment Order is an appealable order under section 904.1, subdivision (a)(5) (§ 904.1(a)(5)).

Crossroads replied to this opposition, stating that the cases relied on by Corliss did not support the contention that an order for additional attachment--as distinguished from an initial order granting a right to attach order and an initial order for writ of attachment-- is appealable under section 904.1(a)(5).[4]

---

[4] Both parties have also argued the issue of the appealability of the Order in their appellate briefs. We have considered those arguments in conjunction with the arguments presented in the motion to dismiss and the opposition to that motion.

5

### 2. *Attachment Generally*

The procedure for obtaining writs of attachment is delineated in section 483.010 et seq. " ' "Attachment is an ancillary or provisional remedy to aid in the collection of a money demand by seizure of property *in advance of trial and judgment*." ' [Citation.] California's Attachment Law [citation] is purely statutory and is strictly construed. [Citation.] . . . [A] plaintiff seeking a right to attach order must show ' "the probable validity" ' of its claim. [Citation.] 'A claim has "probable validity" where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim.' [Citation.]" (*Kemp Bros. Construction, Inc. v. Titan Electric Corp.* (2007) 146 Cal.App.4th 1474, 1476, fn. omitted, original italics.)

An attachment is authorized when it is issued "in an action on a claim . . . for money . . . based upon a contract, express or implied, where the total amount of the claim . . . is a fixed or readily ascertainable amount" of at least $500. (§ 483.010, subd. (a).) Where, as is the case here, the action is against an individual, "an attachment may be issued only on a claim which arises out of the conduct by the defendant of a trade, business, or profession." (*Id.*, subd. (c).) "The trial court must issue a right to attach order if it finds, among other things, that '[t]he plaintiff has established the probable validity of the claim upon which the attachment is based.' [Citation.]" (*Pech v. Morgan* (2021) 61 Cal.App.5th 841, 854, quoting § 484.090, subd. (a)(1).) Such probably validity is established "where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." (§ 481.190.) The court must also find that "[t]he attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based." (§ 484.090, subd. (a)(3).) If the court issues a right to attach order (RTAO) and order for the issuance of a writ of attachment, the issuance of the writ is contingent upon the plaintiff filing an undertaking as provided in section 489.220. (See *Vershbow v. Reiner* (1991) 231 Cal.App.3d 879, 882.)

6

The Code of Civil Procedure authorizes the court to issue additional attachments after it has granted a right to attach order (RTAO), either through a noticed hearing process (see § 484.310), or through plaintiff's ex parte application (see § 484.510). In granting an application for additional attachment, the court is not required to make findings that were required for the prior issuance of an RTAO—those findings including that the plaintiff has shown (1) that the claim is one upon which a writ of attachment may issue, (2) the probable validity of the claim, (3) that the attachment is not sought for a reason other than recovery on the plaintiff's asserted claim, and (4) that the secured amount is greater than zero. (See § 484.090, subd. (a).) Rather, the court must only find that there has been the previous issuance of an RTAO, and that the affidavit accompanying the application identifies the property to be attached and that the property is not exempt from attachment. (§ 484.370 [application on noticed hearing]; § 484.520 [ex parte application].)

### 3. *Appealability of Additional Attachment Order*

Whether the judgment or order is appealable is a jurisdictional question which must be addressed by the appellate court on its own initiative. (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126; see also *Griset v. Fair Political Practices Com'n* (2001) 25 Cal.4th 688, 696 [jurisdiction is vested in appellate court only if the order or judgment is appealable].) " 'It is settled that the right of appeal is statutory and that a judgment or order is not appealable unless expressly made so by statute.' " (*People v. Mazurette* (2001) 24 Cal.4th 789, 792 (*Mazurette*); see also *Rao v. Campo* (1991) 233 Cal.App.3d 1557, 1564 ["the right to appeal in civil actions is wholly statutory"].) Thus, in general, appealable judgments and orders are those listed in section 904.1. (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 19 (*Walker*).)

An order granting a right to attach order is expressly made appealable by statute. Under section 904.1, "[a]n appeal, other than in a limited civil case, may be taken . . .

7

[¶] . . . [¶] (5) [f]rom an order discharging or refusing to discharge an attachment or granting a right to attach order." (§ 904.1(a)(5).) As explained in a leading treatise, "[t]wo types of attachment orders are directly appealable [citation]: An order *granting a right to attach order* [citation]; and [a]n order *discharging or refusing to discharge an attachment*." (Eisenberg et al, Civil Appeals and Writs (The Rutter Group, 2022) § 2:134, original italics.)

Implicit in this statement is that there are *other* types of attachment orders that are *not* appealable. For example, an order denying a right to attach order is not appealable. (*International Typographical Union Negotiated Pension Plan v. Ad Compositors, Inc.* (1983) 142 Cal.App.3d 733, 735 (*International Typographical Union*).) As explained in that case, "Generally, a judgment or order is appealable only if the right to appeal it is expressly granted by statute. [Citation.] The right to appeal from orders relating to attachments is limited by statute to orders 'discharging or refusing to discharge' attachments that have already been executed. [Citations.]" (*Ibid.*, fn. omitted.)[5] Likewise, an order, after issuance of the right to attach order, increasing the amount of an undertaking on the attachment is not appealable. (*Murillo v. Toole* (1941) 47 Cal.App.2d 725, 727.)

In this case, Crossroads argues that the Additional Attachment Order is nonappealable. It contends that the plain language of section 904.1(a)(5) does not provide for the taking of an appeal from an order for an additional attachment. It emphasizes the distinction between the application for, and issuance of, a right to attach

---

[5] In *International Typographical Union*, the court observed that although there was a statutory amendment that would become effective July 1, 1983 (after the case was decided) "expand[ing] the right of appeal to the original order *granting* a writ of attachment, but significantly [it] contains no reference to orders *denying* the writ. [Citation.]" (*International Typographical Union*, *supra*, 142 Cal.App.3d at p. 735, fn. 1, original italics.)

8

order in the first instance, and the later application for, and order for an additional attachment after the issuance of the RTAO.

In construing section 904.1, we apply the following standard of statutory review: "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826; see also *People v. Jones* (1993) 5 Cal.4th 1142, 1146 ["[t]o determine intent, ' "[t]he court turns first to the words themselves for the answer" ' "].) Further, " '[i]f the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) . . . .' " (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798.)

We conclude the statute, section 904.1(a)(5), is clear insofar as its application is strictly limited to permit appeals "[f]rom an order discharging or refusing to discharge an attachment or granting a right to attach order." It does not express a right to appeal from other orders under the Attachment Law (§ 482.010 et seq.), such as a temporary protective order (§ 486.030 et seq.), an order concerning the plaintiff's discovery of assets issued after an RTAO (see § 485.230), or an order increasing the amount of undertaking provided by the plaintiff (§ 489.220, subd. (b)).[6] Further, section 904.1(a)(5) does not identify as appealable an order for an additional attachment after the granting of an RTAO, either after a noticed hearing process (§ 484.310), or by ex parte application (§ 484.510). Moreover, the statutory requirements for an applicant seeking an additional attachment after the issuance of an RTAO are far more limited than those for the issuance

[6] The listing here is given simply as an illustration of other orders under the Attachment Law that are not specifically identified in section 904.1(a)(5). The question of whether such orders may be appealable under the circumstances of a particular case is not before us.

9

of the RTAO itself. As we have noted, *ante*, in granting an application for additional attachment, the court must only find a prior issuance of an RTAO, and that the affidavit accompanying the application for additional attachment identifies the property to be attached, and that such property is not exempt from attachment. (§§ 484.370, 484.520.) The court need not make the findings that were required for the original issuance of an RTAO, including finding that the plaintiff had met his or her burden of establishing all elements for an RTAO under section 484.090, subdivision (a). (See Ahart, Cal Practice Guide: Enforcing Judgments and Debts (The Rutter Group 2022), ¶ 4:416 [noting that the application for additional writ of attachment after noticed hearing is same as the form used for initial application for RTAO, but "it is not necessary to complete most of the form" because of the preexistence of the RTAO].) This substantive difference between the requisite findings for an RTAO and for an additional attachment order also persuade us that there is a practical rationale for making the former order, but not the latter order, appealable. (Cf. *City and County of San Francisco v. Shers* (1995) 38 Cal.App.4th 1831, 1835-1838 [holding that, although an order appointing receiver is appealable pursuant to § 904.1, subd. (a)(7), order appointing successor receiver is not recognized by statute as appealable and thus cannot be appealed unless it is determined in the particular case to be an appealable postjudgment order].)

We conclude that the absence of a reference to additional attachment orders in section 904.1(a)(5) prevents the assertion that such orders are appealable under that statute. Stated differently, we cannot infer from the statutory language permitting appeals "[f]rom an order . . . granting a right to attach order" (*ibid.*) the inclusion of additional attachment orders. To do so would exceed our authority as an appellate court interpreting a statute. "A court ' "may not add to the statute or rewrite it to conform to an assumed intent that is not apparent in its language." [Citation.]' [Citation.]" (*City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153, 1172, quoting *People ex rel. Lungren v. Superior*

10

*Court* (1996) 14 Cal.4th 294, 301.) The insertion of "additional language into a statute 'violate[s] the cardinal rule of statutory construction that courts must not add provisions to statutes. [Citations.]' " (*People v. Guzman* (2005) 35 Cal.4th 577, 587; see also § 1858 [in construing a statute, "the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted"].)

Corliss relies on *United Central Bank v. Superior Court* (2009) 179 Cal.App.4th 212 (*United Central Bank*) in support of his position that the Additional Attachment Order is appealable. There, the case was before the appellate court on the plaintiff's petition for extraordinary writ of mandate from the denial of its application for an RTAO and a writ of attachment. (*Id.* at pp. 213-214, 215.) As *United Central Bank* involved neither an appeal, nor an additional attachment order following a prior issuance of an RTAO, it has no application here.

Corliss also relies on *Lorber Industries v. Turbulence, Inc.* (1985) 175 Cal.App.3d 532 (*Lorber*). That case concerned an appeal from the granting of an RTAO, based upon the defendant's assertion that the trial court erred in finding that the plaintiff had established the probable validity of its claim. (*Id.* at pp. 534, 535.) Thus, *Lorber* involved an appeal from an RTAO, an order expressly made appealable under section 904.1(a)(5). The case offers no support for Corliss's assertion that the Additional Attachment Order is appealable.[7]

Lastly, *Risdon Iron & Locomotive Works v. Citizens' Traction Co. of San Diego* (1898) 122 Cal. 94 (*Risdon Iron*), relied on by Corliss, does not support his contention that the Additional Attachment Order is an appealable order. That case concerned an

---

[7] Similarly, Corliss's reliance on *Goldstein v. Barak Construction* (2008) 164 Cal.App.4th 845 is misplaced, as that case concerned an appeal from an RTAO and an attachment order (*id.* at pp. 848-849, 850-851), not an additional attachment order.

appeal from an order " 'dissolving or refusing to dissolve an attachment' " that had previously issued. (*Id.* at p. 96.) *Risdon Iron* did not involve an additional attachment order. Rather, it concerned a challenge to an order expressly made appealable under former section 963, now section 904.1(a)(5). (See Stats. 1968, ch. 385, § 2.)[8]

In his opposition to the motion, Corliss makes the further argument that the Additional Attachment Order was, in fact, an initial right to attach order because of preprinted language on the Judicial Council form (except for boldfaced text) stating: "Plaintiff has a right to attach property of defendant (name): **ROBERT JAMES CORLISS** in the amount of: **$1,538,720.09**." (Boldface added.) He asserts that the court thus issued an RTAO and ordered the issuance of a different writ of attachment based upon a finding of a right to attach other property (the UBS account) not part of the original order of attachment. The argument has no merit. The fact remains that the Order that Corliss challenges on appeal here is an order for additional attachment, not an initial RTAO and order for issuance of writ of attachment. "The substance and effect of the order, not its form, determine whether or not it constitutes an appealable final judgment or order. [Citation.]" (*Daugherty v. City and County of San Francisco* (2018) 24 Cal.App.5th 928, 942.) The Additional Attachment Order was plainly not "an order . . . granting a right to attach order" for which an appeal is expressly authorized under section 904.1(a)(5).

As a final matter in his opposition, Corliss argues that "even if *arguendo* the April 27, 2021 order is not an appealable order, . . . this Court still has discretionary

---

[8] In support of his position that the Order is appealable, Corliss also cites—twice in his motion and three times in his appellate briefs—an unpublished California opinion. (See *Bankfirst v. Bardis* (Aug. 3, 2010, C059292) [nonpub. opn.].) Because the citation to unpublished opinions is improper, we will not consider the unpublished decision cited by Corliss here. (See Cal. Rules of Court, rule 8.1115(a) [unpublished appellate opinion "must not be cited or relied on by a court or a party in any other action"]; see also *Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, 399.)

12

jurisdiction to decide it as a petition for writ of mandate." Corliss cites no legal authority, and he presents no discussion (beyond incorporating "the reasons set forth above [in his brief]") explaining why this court has the authority, and if so, why it should consider his appeal as a petition for writ of mandate. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [cursory presentation of argument without legal authority is deemed abandoned].) Corliss is apparently alluding to the principle, enunciated by the California Supreme Court, that an appellate court has the discretion "to treat [a] purported appeal as a petition for writ of mandate," an approach that should be taken only "under unusual circumstances." (*Olson v. Cory* (1983) 35 Cal.3d 390, 401.) Unusual or exceptional circumstances are not presented here, and we decline Corliss's suggestion that we treat his unauthorized appeal from the Additional Attachment Order as a petition for writ of mandate.

The right to appeal is statutory; the " 'order is not appealable unless expressly made so by statute.' " (*Mazurette*, *supra*, 24 Cal.4th at p. 792.) Orders that are appealable are those identified in section 904.1. (*Walker*, *supra*, 35 Cal.4th p. 19.) We conclude that the Additional Attachment Order is not one made expressly appealable under section 904.1(a)(5), or under any other statutory provision. Since we have no jurisdiction to hear this appeal, we must therefore dismiss the appeal by Corliss from this nonappealable order. (*Art Movers, Inc. v. Ni West, Inc.* (1992) 3 Cal.App.4th 640, 645.).

## III.   DISPOSITION

The appeal from the order of April 23, 2021, granting the application for issuance of an additional writ of attachment is dismissed. Respondent is awarded its costs on appeal.

13

_____
BAMATTRE-MANOUKIAN, Acting P.J.

WE CONCUR:

_____
DANNER, J.

_____
WILSON, J.

*Crossroads Financial, LLC v. Corliss*
**H049208**